UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| JAMES A. DEATON, : | |
| : | |
| Petitioner, : | Case No. 3:22-cv-112 |
| : | |
| v. : | Judge Thomas M. Rose |
| : | |
| WARDEN, MADISON CORRECTIONAL : | Magistrate Judge Kimberly A. Jolson |
| INSTITUTION, : | |
| : | |
| Respondent. : | |

**ENTRY AND ORDER OVERRULING PETITIONER'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION (DOC. NO. 15); ACCEPTING AND ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDATIONS (DOC. NO. 12); GRANTING THE RESPONDENT'S MOTION TO DISMISS HABEAS PETITION AS TIME-BARRED (DOC. NO. 8); AND DISMISSING THIS CASE WITH PREJUDICE**

This habeas corpus action is before the Court on the Petitioner's Objections to Magistrate's Report and Recommendation (Doc. No. 15), filed by Petitioner James A. Deaton ("Petitioner" or "Deaton"). Deaton objects to a Report and Recommendation issued by United States Magistrate Judge Kimberly A. Jolson (Doc. No. 12) (the "R&R"), in which she recommended that a motion to dismiss (Doc. No. 8) filed by Respondent Warden, Madison Correctional Institution ("Respondent" or "Warden") be granted and that Deaton's petition for writ of habeas corpus (Doc. No. 1) be dismissed with prejudice because it is time-barred.[1]

For the reasons set forth below, the Court finds that Deaton's petition for writ of habeas corpus (Doc. No. 1) is statutorily time-barred under 28 U.S.C. § 2244(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA") and, therefore, must be dismissed. The Court overrules

---

[1] *Deaton v. Warden, Madison Corr. Inst.*, No. 3:22-cv-112, 2023 U.S. Dist. LEXIS 13252, 2023 WL 406178 (S.D. Ohio Jan. 25, 2023) (Report and Recommendation).

1

Deaton's objections, finding that (1) 28 U.S.C. § 2244(d)(1)(D) does not offer him the further delay he seeks in the commencement of the limitations period, and (2) he is not exempt from the AEDPA's statute of limitations based on an alleged claim of actual innocence (and is not entitled to equitable tolling).

## I. STANDARD OF REVIEW

A party may serve and file specific written objections to a magistrate judge's proposed findings and recommendations concerning a dispositive motion within fourteen days of being served with a copy of the recommended disposition. Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy of the objections. *Id.*

Regarding resolving objections to a magistrate judge's recommended disposition for a dispositive motion, Federal Rule of Civil Procedure 72 states that "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). Additionally, "while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. U.S.*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000); *see also Harris v. Ocwen Loan Servicing, LLC*, No. 17-5399, 2017 U.S. App. LEXIS 23818, 2017 WL 8791308, at *2 (6th Cir. Nov. 22, 2017) ("[a]pplying this rule, [the Sixth Circuit Court of Appeals] has found various issues raised for the first time in objections to a magistrate judge's report to be waived").

The undersigned has conducted a review of the record for purposes of determining, *de novo*, the portions of the magistrate judge's R&R to which Petitioner has properly objected.

## II.     BACKGROUND

Deaton is an inmate in state custody at the Madison Correctional Institution. (Doc. No. 12 at PageID 813.) He challenges his convictions in the Montgomery County (Ohio) Court of Common Pleas, Case No. 2016 CR 00066 A/B. (*Id.*; Doc. No. 1 at PageID 2.) He was convicted and sentenced for the following crimes: one count of felonious assault with a deadly weapon with a firearm specification; one count of discharging a firearm on or near a prohibited premises with a firearm specification; one count of domestic violence; one count of abduction with a firearm specification; and one count of having weapons while under disability. (*Id.*) The crimes resulted from an encounter that Deaton had with his estranged wife at their former marital residence. (Doc. No. 11 at PageID 795 (citing Doc. No. 7 at PageID 709).) Deaton was in possession of a loaded revolver that discharged twice after he exited the front of the residence, striking his wife's vehicle while she sat inside it. (*Id.*)

On May 18, 2016, a jury found Deaton guilty of the crimes, and the trial court sentenced him to a total aggregate prison sentence of fifteen years in the Ohio Department of Corrections. (Doc. No. 7 at PageID 236-251.) On July 13, 2016, Deaton filed a direct criminal appeal to the Ohio court of appeals. (Doc. No. 12 at PageID 814.) On August 4, 2017, the Ohio court of appeals affirmed the trial court's judgment. (*Id.*) Afterward, in August and September of 2017, according to Deaton, he spoke with several attorneys regarding whether to appeal that judgment to the Ohio Supreme Court. (Doc. No. 11-1 at PageID 509-10.) This included that, on September 6, 2017, he spoke with an attorney who suggested that Deaton contact a ballistics expert and recommended John Nixon ("Nixon") as a potential expert witness. (*Id.*)

The forty-five-day period in which Deaton could have sought review of his direct appeal in the Ohio Supreme Court passed on September 18, 2017; Deaton did not seek such an appeal.

3

(Doc. No. 12 at PageID 814, 817.)  On December 15, 2017, nearly three months later, Deaton filed a petition for post-conviction relief under Ohio Rev. Code § 2953.21 in state court.  (*Id.* at PageID 815.)  In that petition, he argued ineffective assistance of trial counsel and purported to have new evidence in the form of expert affidavits and medical records establishing that the shooting was accidental.  (*Id.*)  Deaton says that he received an affidavit from Nixon the prior day, i.e., on December 14, 2017.  (Doc. No. 11-1 at PageID 811.)  The state post-conviction court denied Deaton's post-conviction petition, and the Ohio court of appeals affirmed that judgment.  (Doc. No. 12 at PageID 815.)  That court of appeals found that "the trial court did not abuse its discretion in finding that the ineffective assistance of counsel claim raised in [Petitioner's] petition for post-conviction relief lacked merit."  (*Id.* (quoting Doc. No. 7 at PageID 723) (alterations in original).)  On April 27, 2021, the Ohio Supreme Court declined further review.  (*Id.*)

On April 27, 2022, Deaton filed his petition for writ of habeas corpus in this Court.  (Doc. No. 1.)  Therefore, he had waited one year from the Ohio Supreme Court's denial of discretionary review regarding his state court petition for post-conviction relief to file his habeas petition.  (*Id.*; Doc. No. 12 at PageID 822.)  The habeas petition raises the following single ground for relief:

> **GROUND ONE:** Ineffective assistance of counsel.
>
> **Supporting Facts**: There was a material conflict between the testimony of Petitioner and victim in the case as to Petitioner's location when the firearm discharged. Trial counsel should have obtained a firearms and ballistics expert to investigate the matter and testify in Petitioner's defense. Trial counsel also should have introduced medical records in support of Petitioner's defense. Trial counsel's failure to do so amounted to ineffective assistance of counsel.

(Doc. No. 12 at PageID 816 (quoting Doc. No. 1 at PageID 6).)  Respondent filed a Motion to Dismiss Habeas Petition as Time-Barred (Doc. No. 8), to which Deaton filed a response (Doc. No. 11).

On January 25, 2023, Magistrate Judge Jolson issued the R&R, recommending that the

4

motion to dismiss be granted and the petition for writ of habeas corpus be dismissed with prejudice because it was time-barred and Deaton failed to demonstrate that he is entitled to equitable tolling. (Doc. No. 12.) The R&R found that, in accordance with 28 U.S.C. § 2244(d), the statute of limitations started running on September 19, 2017 (the next business day after Deaton's conviction became final); Deaton filing his petition for post-conviction relief in state court on December 15, 2017 tolled the limitations period until the Ohio Supreme Court declined to accept jurisdiction regarding it on April 27, 2021; the limitations period began running again the next day; and the limitations period expired on January 29, 2022—approximately three months before Deaton filed the habeas corpus petition. (*Id.* at PageID 817-18.)

On February 8, 2023, Deaton filed timely objections to the R&R ("Objections"). (Doc. No. 15.) Respondent did not file any response to the Objections, and the time to do so has passed. Fed. R. Civ. P. 72(b)(2). The matter is ripe for review and decision.

### III. ANALYSIS

The Objections identify two objections to the R&R. (Doc. No. 15.) First, Deaton argues that his Petition is timely under 28 U.S.C. § 2244(d)(1)(D) ("Section 2244(d)(1)(D)"). Second, Deaton argues that his evidence is sufficient to show actual innocence, for purposes of equitably tolling the applicable statute of limitations. The Court addresses both objections, below.

#### A. Application of 28 U.S.C. § 2244(d)(1)(D)

For a person in custody pursuant to the judgment of a state court, the statute of limitations to apply for a writ of habeas corpus in federal court runs from the latest of several specified events. 28 U.S.C. § 2244(d); *Stokes v. Leonard*, 26 F. App'x 801, 804 (6th Cir. 2002). Section 2244(d)(1)(A) establishes the general rule that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final. 28 U.S.C. § 2244(d)(1)(A); *Vroman v. Brigano*, 346 F.3d 598, 601 (6th Cir. 2003) ("Under AEDPA, a prisoner has one year from the

5

completion of the direct review of his case to commence a collateral attack on his conviction"). However, Section 2244(d)(1)(D) establishes that the one-year period will not start running until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Thus, Section 2244(d)(1)(D) may operate to delay the start of the limitations period.

Additionally, Section 2244(d)(2) is a tolling provision that states: "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation" in Section 2244(d). 28 U.S.C. § 2244(d)(2). In other words, the clock (i.e., the one-year limitations period) stops when such a filing is made; it is tolled. *Id.*; *Bronaugh v. Ohio*, 235 F.3d 280, 282-83 (6th Cir. 2000). Significantly, the clock is not reset after such a filing has been resolved. *Vroman*, 346 F.3d at 602 ("[t]he tolling provision [in Section 2244(d)(2)] does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run") (internal quotation marks omitted); *Jackson v. Cameron*, No. 21-5429, 2022 U.S. App. LEXIS 5532, 2022 WL 1279731, at *2 (6th Cir. Mar. 2, 2022) (the Section 2244(d)(2) tolling provision "only pauses a clock that has not fully expired").

1) **R&R and objection**

The R&R found that Deaton "is not entitled to a delayed start of the limitations period under § 2244(d)(1)(D)." (Doc. No. 12 at PageID 818.) The R&R explained that (a) Deaton would have been aware of his trial counsel's alleged deficiencies at the time of trial, and (b) even assuming that Deaton was not or could not have been aware of his counsel's ineffectiveness at the time of trial, Deaton "would have had a good-faith basis to argue prejudice from trial counsel's alleged failure to call a firearms and ballistics expert at the latest by September 6, 2017." (*Id.* at PageID 819-20.) Again, September 6, 2017 was the date Deaton says he spoke with an attorney

who suggested that Deaton contact a ballistics expert and recommended such an expert (Nixon). (Doc. No. 11-1 at PageID 509-10.)  Finally, the R&R stated that, in arguing that he did not learn the basis of his ineffective-assistance-of-counsel claim until he received Nixon's affidavit on December 14, 2017, Deaton "conflates learning of the facts necessary to make a good faith argument of prejudice, with learning the legal significance of the facts."  (Doc. No. 12 at PageID 820.)

In the Objections, Deaton acknowledges that, at his criminal trial, he discovered a discrepancy between his story and his wife's story regarding where Deaton was when the gun discharged.[2]  (Doc. No. 15 at PageID 844.)  Deaton then argues that, "[e]ven assuming, *arguendo*, that [he] knew or should have known by September 6, 2017[] that an expert witness was necessary to challenge trial counsel's ineffectiveness, he still had to obtain an affidavit from an expert to file his post-conviction petition" because otherwise the state trial court would have denied his claim in that post-conviction petition.  (*Id.*)  More specifically, although he "knew the facts and the legal significance of a ballistics expert," he purportedly needed "to obtain an affidavit from an expert to file his post-conviction petition" with the State court, yet (according to Deaton) "he was unable to obtain an affidavit to support the post-conviction petition until December 14, 2017." (*Id.* at PageID 844, 847.)  He asserts that his habeas corpus petition is therefore timely under Section 2244(d)(1)(D).  (*Id.*)  He also argues that the cases cited in the R&R do not support the contention that he should be barred from relief.  (*Id.* at PageID 846-47.)

2) **Determination**

As an initial matter, to the extent that one would deem Deaton's Objections as properly

---

[2] According to Deaton, his wife indicated that Deaton was at the top of the steps outside the doorway to the home when the gun discharged, while Deaton testified that he fell at the bottom of the steps on the concrete sidewalk when the gun discharged.  (Doc. No. 15 at PageID 844.)

7

objecting to this part of the magistrate judge's recommended disposition, the Court agrees with the R&R's conclusion and analysis that, "[b]ased on Petitioner's own averments, … Petitioner would have had a good-faith basis to argue prejudice from trial counsel's alleged failure to call a firearms and ballistics expert at the latest by September 6, 2017" (Doc. No. 12 at PageID 820). *See Stokes*, 36 F. App'x at 803-05 (rejecting petitioner's Section 2244(d)(1)(D) argument that he did not discover the factual predicate to his ineffective-assistance-of-counsel claim until the date his expert executed an affidavit containing the expert's opinion that petitioner's trial counsel's failure to employ an expert witness at trial was inexcusable; explaining that "[o]ne might ask how [petitioner] came to inquire of [the expert who filed the affidavit] in the first place unless [petitioner] had some knowledge of the factual predicate for this claim prior to his obtaining [the expert's] affidavit"). Further, Deaton acknowledges that, at least by the end of the trial, he knew there was a discrepancy between his story and his wife's story regarding where he was when the gun discharged (Doc. No. 15 at PageID 844). *Duncan v. Ryan*, No. CV-11-8067-PCT-JAT, 2015 WL 13735818, at *41 (D. Ariz. Aug. 7, 2015), *report and recommendation accepted*, 2016 WL 316882, at *17 (D. Ariz. Jan. 27, 2016) (where petitioner argued that trial counsel was ineffective for failing to request a psychological evaluation of petitioner, to the extent petitioner was asserting that he had a right to obtain an evaluation or that the facts from such an evaluation might have provided a defense at trial, petitioner was not delayed from a lack of facts, but a lack of knowledge of their legal significance—and that does not justify a delayed commencement under Section 2244(d)(1)(D)).

The law does not support Deaton's argument: that the one-year statute of limitations period should only have started running on December 14, 2017, pursuant to Section 2244(d)(1)(D), because, until that time, he allegedly "was unable to obtain an affidavit to support the post-

8

conviction petition." (Doc. No. 15 at PageID 843-48.) Courts in this circuit and across the nation have rejected the notion that, applying Section 2244(d)(1)(D), the statute of limitations should not run until the petitioner is able to gather evidence to support the claim or claims presented in the petition for writ of habeas corpus. *See, e.g., Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) ("commencement of the one-year period would not be delayed while [p]etitioner was attempting to obtain the jury instructions from his co-defendant's trial" in support of petitioner's claims; dismissing habeas petition with prejudice because it did not comply with the statute of limitations); *Pedraza v. Paramo*, No. SA CV 11-0979-JVS (SP), 2012 WL 934122, at *3-4 (C.D. Cal. Jan. 23, 2012), *report and recommendation accepted*, 2012 WL 933616 (C.D. Cal. Mar. 19, 2012) (no basis for a deferred AEDPA limitations start date, under Section 2244(d)(1)(D), where petitioner claimed ineffective assistance of trial counsel for failing to conduct an adequate pretrial investigation; finding that the fact "petitioner did not obtain a declaration from [the alibi witness] until later is irrelevant" because, "[u]nder § 2244(d)(1)(D), the limitation period begins to run from the date the factual predicate of the claim could have been discovered, not from the date evidence to support the claim is obtained"); *Jack v. Tanner*, Civil No. 6:16-00988, 2016 WL 6638869, at *3 (W.D. La. Sept. 19, 2016), *report and recommendation accepted*, 2016 WL 6639250, at *1 (W.D. La. Nov. 9, 2016) (finding habeas petition statutorily time-barred, and that Section 2244(d)(1)(D) offered petitioner no relief, where petitioner admitted knowing since 2011 that an estranged relative with whom he had a bad relationship sat on his grand jury, yet he did not receive evidence supporting that claim until 2013 (when he received the clerk's certified documents) or 2014 (when he received affidavits from his relatives)); *Brooks v. Henderson*, No. 6:11-cv-1272, 2012 WL 2839464, at *5 (W.D. La. Mar. 27, 2012), *report and recommendation accepted*, 2012 WL 2839822 (W.D. La. July 10, 2012) ("[i]t appears that petitioner confuses his knowledge of the

9

factual predicate of his claim, [a witness's] alleged false testimony, with his receipt of evidence supporting the claim[, an affidavit from the witness]"); *Mora v. Almager*, No. CV 08-1147-DMG (SP), 2012 WL 845920, at *4-5 (C.D. Cal. Jan. 23, 2012), *report and recommendation accepted*, 2012 WL 845764 (C.D. Cal. Mar. 12, 2012) (limitations period under Section 2244(d)(1)(D) began running when petitioner first learned that a witness "may have recanted her identification of petitioner," even though petitioner's father did not locate the witness to obtain a declaration from her until several months later; the limitations period under Section 2244(d)(1)(D) "begins to run from the date the factual predicate of the claim could have been discovered, not from the date evidence to support the claim is obtained"); *see also Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (rejecting petitioner's assertion that the one-year period begins when he "actually understands what legal theories are available"); *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003) ("AEDPA does not convey a right to an extended delay while a habeas petitioner gathers every scrap of evidence that might support his claim" and "[n]either does equitable tolling grant such a right").

Where a petitioner is aware of the factual predicate of his or her ineffective-assistance-of-counsel-claim, the one-year period of limitation does not wait for the petitioner to have documentary evidence to support that claim before running. *Redmond*, 295 F. Supp. 2d at 772 (regarding Section 2244(d)(1)(D), "it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits"); *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (Section 2244(d)(1)(D)'s language "means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner

has in his possession evidence to support his claim"); *Jack*, 2016 WL 6638869, at *3 ("under Section 2244(d)(1)(D), the applicable date is the date on which vital facts are first discovered, not when evidence to support those facts is first acquired").

Whether the affidavit from Nixon was necessary for purposes of Deaton's state court petition for post-conviction relief changes nothing, at least with respect to the application of Section 2244(d)(1)(D) and (d)(2). *Myers v. Cain*, No. 01-31310, 55 F. App'x 716, 2002 U.S. App. LEXIS 28418, 2002 WL 31933051, at *2 (5th Cir. Dec. 16, 2002) (per curiam) (the filing and pendency of a civil suit that petitioner initiated "to obtain evidence needed for a state habeas petition" did not toll the statute of limitations under Section 2244(d)(2); rejecting argument by petitioner that the "civil suit he filed was such an essential part of his quest for post-conviction relief" that, legally or equitably, additional tolling should apply for that proceeding; affirming district court's dismissal of petitioner's federal habeas corpus petition as untimely under AEDPA). Deaton does not cite any authority showing otherwise. Instead, Deaton cites to *State v. Martin*, 2004 WL 41506, 2004-Ohio-73 (Ohio Ct. App. 2004) to support his argument. However, that Ohio state court opinion does not rescue his time-barred claim here. In *Martin*, a defendant filed a <u>petition for post-conviction relief in state court</u> beyond the time authorized by an Ohio state statute for doing so. *Martin*, 2004-Ohio-73 at ¶ 3. The state trial court denied his petition for post-conviction relief as time-barred. *Id.* On appeal in state court, the defendant argued that a particular Ohio state statute (Ohio Rev. Code § 2953.23), under certain circumstances, extends the time for filing a petition for post-conviction relief in Ohio state court. *Id.* The Ohio court of appeals interpreted that Ohio state statute, agreed with the defendant that he had fulfilled one of the two requirements for extending the time to file a petition for post-conviction relief in Ohio state court, and remanded the case to the state trial court to determine whether the defendant had fulfilled the

11

other requirement for filing an otherwise tardy state court petition for post-conviction relief. *Id*. at ¶ 16.

Deaton asserts that, "[i]n order to ensure that the Montgomery County Court of Common Pleas [did] not deny his post-conviction petition based on unsupported claims, Deaton followed the [Ohio] Second District's case law [i.e., *Martin*] and waited until he had an affidavit from an expert witness to support those claims." (Doc. No. 15 at PageID 845.) While *Martin* may explain why Deaton filed his petition for post-conviction relief in state court when he did (and may have supported an argument it was not untimely under the Ohio Revised Code, if that ever became an issue in state court), *Martin* did not address the statute of limitations for filing a petition for habeas corpus in federal court and it does not change the outcome here.[3] 28 U.S.C. § 2244(d); *Myers*, 2002 WL 31933051, at *2.

Deaton's lack of authority to support his argument includes that he does not cite any authority that would allow this Court to graft onto the federal statute (28 U.S.C. § 2244(d)) an allowance for further delaying the start of the limitations period so that a potential petitioner can gather evidence to support a "properly filed application for State post-conviction or other collateral

---

[3] Deaton does cite to federal caselaw for the principle that "'federal courts must defer to a state court's interpretation of its own rules of evidence and procedure' in considering a habeas petition." (Doc. No. 15 at PageID 846 (citing *Worrell v. Sheets*, No. 2:08-cv-271, 2009 WL 2591667, at *1 (S.D. Ohio Aug. 19, 2009) and *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).) However, that principle is inapplicable because, here, a federal court is interpreting a federal statute (28 U.S.C. § 2244) and, unlike in the cases cited by Deaton, the specific issue presented in his objection does not involve interpretation of state law rules of evidence or state law rules of procedure. *See Worrell*, 2009 WL 2591667, at *1 (finding that "Petitioner's claim necessarily involves Ohio's interpretation of Ohio law," where the petitioner argued that the state trial court was without authority under Ohio law to impose consecutive terms of incarceration and that a Ohio Supreme Court decision contrary to his argument was wrongly decided; explaining that, "[b]ecause it cannot be said that Ohio law prohibits imposition of consecutive sentences on petitioner, it cannot be said that petitioner was thereby denied his constitution right to due process"); *Allen*, 845 F.2d at 614 (involving the state trial court's interpretation of "Ohio R. Evid. 804(A) to require the proponent of the hearsay evidence, i.e., former testimony, to initiate and pursue independent efforts to prove the unavailability of a witness as a condition precedent to its admission," the "reviewing Ohio courts found no error in that interpretation," and, "[a]ccordingly, the state court's decision that Ohio R. Evid. 804(A) obligated [petitioner's] counsel to initiate and exhaust meaningful independent efforts to locate [witness] in order to prove his unavailability is binding upon this court"); *see also Myers*, 2002 WL 31933051, at *2.

review" under the tolling provision in Section 2244(d)(2). Instead, the tolling provision specifically and unambiguously states that it is the time during which such a filing "<u>is pending</u>" that "shall not be counted toward" the period of limitation, not the time to prepare such a filing or gather necessary evidence for such a filing.[4] 28 U.S.C. § 2244(d)(2) (emphasis added). This Court will not rewrite the statute enacted by Congress. *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 253 (6th Cir. 2020) ("[i]f the language of the statute is clear, the court applies the statute as written") (internal quotation marks omitted); *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) (the Court's "unwillingness to soften the import of Congress' chosen words even if [it] believe[s] the words lead to a harsh outcome is longstanding" and "results from deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill") (internal quotation marks omitted). As shown in the R&R, application of the statute and federal law shows that Deaton blew the one-year statute of limitation period by several weeks.

### B. Application of Equitable Tolling Principles Concerning Actual Innocence

The R&R also explained that, "'[t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, … a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of … new evidence.'" (Doc. No. 12 at PageID 823 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).) The R&R went on to find that Deaton failed to make such a showing. (*Id.*)

In the Objections, Deaton argues that his evidence is sufficient to show actual innocence for tolling. (Doc. No. 15 at PageID 848.) He asserts that Nixon's affidavit "substantiates [his]

---

[4] Moreover, needing additional time to gather evidence to support his state court petition for post-conviction relief does not clarify or show why Deaton waited from April 27, 2021 (when the Ohio Supreme Court denied further review of the application for post-conviction review) to April 27, 2022 to file his writ of habeas corpus in this Court. The Magistrate Judge found—without objection from Deaton—that Deaton "has not argued that he was prevented from filing a habeas petition during [that one-year time frame] nor has he informed the Court of any extraordinary circumstances that explains his delay in doing so." (Doc. No. 15; Doc. No. 12 at PageID 822.)

13

claim that he has always been innocent." (*Id.* at PageID 849.) The Court will construe this as an argument that he should be exempt from the AEDPA's statute of limitations because he has a credible claim of actual innocence. *See Davis v. Bradshaw*, 900 F.3d 315, 325 n. 6 (6th Cir. 2018) (explaining that, despite the Sixth Circuit Court of Appeals at times conflating the actual innocence exception and the equitable tolling doctrine, the two are distinct because "equitable tolling requires a showing of diligence, while the actual-innocence exception does not").[5]

The Sixth Circuit Court of Appeals in *Davis* clarified the limitations exception and applicable standard:

> A habeas petitioner is entitled to an equitable exception to AEDPA's one-year statute of limitations if he makes a credible showing of actual innocence. This type of actual innocence claim, sometimes called gateway innocence, does not by itself provide a basis for relief. The innocence showing is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. Thus, a petitioner's showing of a credible claim of innocence allows him to skirt a procedural defect in his claim so that a federal court may address his allegation of constitutional error. But this innocence gateway is a narrow one. The Supreme Court has cautioned that it should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. The exception applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner. The reviewing court must make a probabilistic determination about what reasonable, properly instructed jurors would do.

*Davis*, 900 F.3d at 326 (internal quotation marks omitted; internal citation omitted; alterations adopted). Additionally, "[f]or a petitioner to establish entitlement to the actual-innocence exception, he must support his allegations of constitutional error with new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence,

---

[5] If the Court were to construe the argument as one for equitable tolling, it would fail. Again, Deaton waited one year from the Ohio Supreme Court's April 27, 2021 denial of discretionary review to file his habeas petition, and there is no explanation for his delay or argument that he was prevented from filing a habeas petition during that one year time frame. (Doc. No. 12 at PageID 822; Doc. No. 15 at PageID 848-49.) The petitioner "bears the burden of demonstrating that he is entitled to equitable tolling," and "[t]he doctrine is used sparingly by federal courts." *Jurado*, 337 F.3d at 642.

14

that was not presented at trial." *Id.*

Deaton has not met this high standard. *Davis*, 900 F.3d at 334 ("[t]he actual-innocence exception is an important, though extraordinary, remedy, one that we refuse to provide in a less-than-extraordinary case") (internal quotation marks omitted). He has not established that new evidence shows it is more likely than not that no reasonable juror would have convicted him. He is not entitled to an equitable exception to the AEDPA's one-year statute of limitations based on his "actual innocence" argument.

## IV. CONCLUSION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), the Court has conducted a review of the record for purposes of determining, *de novo*, the portions of the magistrate judge's R&R to which Petitioner has properly objected. Upon said review and analysis, for the reasons stated above, the Court finds that Petitioner's objections to the R&R are not well taken, and they are **OVERRULED**. The Court **ACCEPTS** the magistrate judge's recommendation, **ADOPTS** the magistrate judge's R&R (Doc. No. 12), and rules as follows:

1. Respondent's Motion to Dismiss Habeas Petition as Time-Barred (Doc. No. 8) is **GRANTED**;

2. Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. No. 1) is **DISMISSED WITH PREJUDICE**;

3. A certificate of appealability is **ISSUED** with respect to the limited issue of whether Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is time-barred;

4. With respect to any application by Petitioner to proceed on appeal *in forma pauperis*, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of

this order would be taken in "good faith," and therefore **GRANTS** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity; and

5. The Clerk of Court is **DIRECTED** to terminate this case.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, March 17, 2023.

                                                    s/Thomas M. Rose
                                                    _____
                                                    THOMAS M. ROSE
                                              UNITED STATES DISTRICT JUDGE